# MEMORANDUM OPINION
*(Bench Opinion)*

June 7, 2006

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| MARK J. HOFFSIS | : | Case No. 06-30547 |
| STEPHANIE R. HOFFSIS | : | Chapter 13 |
| | : | |
| Debtors | : | |

BEFORE THE HONORABLE RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

    FOR THE DEBTORS:

    MELISSA J. WORTLEY, ESQ.
    GAIL F. WORTLEY, ESQ.
    3715 Powers Street
    Knoxville, Tennessee  37917

    FOR COLONIAL LOAN ASSOCIATION, INC.:

    WILLIAM STANTON MASSA, III, ESQ.
    Post Office Box 1515
    Morristown, Tennessee  37816-1515

    CHAPTER 13 TRUSTEE:

    GWENDOLYN M. KERNEY, ESQ.
    P.O. Box 228
    Knoxville, Tennessee 37901

1        THE COURT: This contested matter is before me on the Objection to

2 Confirmation of Chapter 13 Plan filed April 7, 2006, by Colonial Loan Association, Inc.

3 Initially, the Chapter 13 Trustee had also interposed an objection to confirmation. Her

4 objection was resolved through plan amendments that will be incorporated into the plan.

5        Colonial's objection, as I understand it, boils down to three issues: One,

6 under the new Reform Act of 2005, Section 1325(a)(7) of title 11 requires that the

7 Debtors' case be filed in good faith – Colonial contends it was not; Colonial also states

8 that the Debtors' plan does not meet the good faith confirmation requirement of

9 11 U.S.C. § 1325(a)(3); and, finally, it objects on the ground that it contends it should

10 have been treated as a secured creditor under 11 U.S.C. § 1325(a)(5)(B) rather than as a

11 wholly unsecured creditor.

12        The Debtors' plan was originally filed on March 23, 2006, and proposed

13 weekly payments of $344.00 over 60 months, plus tax refunds in excess of $1,000.00,

14 with a dividend anticipated at 5 percent or less. As indicated, there was no secured

15 treatment proposed for Colonial in that plan and, in their schedules, the Debtors list

16 Colonial as an unsecured creditor holding a $7,000.00 claim for a deficiency balance.

17 Colonial has filed a claim as secured alleging a security interest in a 1994 Chevrolet

18 truck. The Debtors amended their plan on May 5, 2006, basically just changing their

19 proposed monthly payment to $350.00, plus tax refunds and altering the amount of their

20 mortgage payment.

21        The gist, if you will, of Colonial's objection, as I understand it, is the

22 treatment of their claim, the actions of the Debtors in a prior case, and, to some extent,

23 in the present case, with respect to a tax refund received postpetition. This is, as I have

24 indicated, the second case filed by Mr. and Mrs. Hoffsis. Their first case was filed on

25 June 20, 2005, and was assigned Case Number 05-33352. They did obtain confirmation

1    of their plan in the earlier case on August 2, 2005, which provided for treatment of

2    Colonial's claim as secured with the collateral being the 1994 Chevrolet pickup truck

3    and a 1999 Oldsmobile Silhouette, which had a combined value of some $8,900.00, to

4    be paid out over monthly payments which are not particularly relevant to this case.

5    There were insurance problems during the pendency of the Debtors' second case and

6    the insurance was cancelled.  Colonial obtained relief from the stay.  I entered an order

7    continuing the stay in effect so long as the insurance coverage was maintained, but

8    granted relief in the event that coverage lapsed or was cancelled.  It did lapse and

9    Colonial ultimately repossessed both vehicles and therein lies part of the problem.  In

10    mid-November 1995, as I understand it, the 1999 Oldsmobile was repossessed, but

11    representatives of Colonial were unable to find the 1994 Chevrolet pickup truck.

12        The testimony before me this afternoon is that Mr. and Mrs. Hoffsis allowed

13    Mrs. Hoffsis' minor sister, who lived in North Carolina, to borrow the pickup truck in

14    order that her boyfriend, who is some 20 years old, might use it to move to North

15    Carolina.  The pickup was placed in the possession of the boyfriend, who was the only

16    licensed driver, on or about November the 8th.  The vehicle was then driven to North

17    Carolina.  The insurance was subsequently cancelled.  The bottom line is the boyfriend

18    removed the transmission and engine from the pickup truck and essentially stripped it.

19    It was returned to Knoxville where it was repossessed sometime in November by

20    Colonial.  In essence, Colonial obtained a shell.  There is no proof in the record today

21    that the vehicle has any value whatsoever.  Testimony from Colonial's representative is

22    that Mr. Hoffsis at some point in time indicated that he would deliver the pickup to

23    Colonial when, in fact, it had already been taken up to North Carolina, as I understand

24    it.

25        Mrs. Hoffsis testified today that she and her husband had no knowledge that

1   the transmission and engine were going to be removed from the vehicle; they did not

2   authorize the removal nor would they have authorized it.  Had they known about it in

3   advance, Mrs. Hoffsis testified they would have required the vehicle be brought back to

4   Knoxville with the parts intact because Mr. Hoffsis is a mechanic who has the ability to

5   make any repairs himself.  I am satisfied from her testimony that the Debtors did not

6   authorize the removal of the engine, transmission, grille, and related accessories from

7   the 1994 Chevrolet pickup.  There is some testimony about whether the grille was

8   located at the Debtors' residence when a representative from Colonial went to the

9   property.  I cannot make a finding from his testimony that the grille that was seen was

10  the grille that belonged to the 1994 pickup truck.  Mrs. Hoffsis' testimony is that, as I

11  said, her husband is a mechanic.  He obviously deals in motor vehicles.  There was

12  another truck belonging to a friend at the residence with the grille intact, but when her

13  friend purchased that vehicle, there were accessories that were also purchased.  There is

14  nothing in the record to contradict Mrs. Hoffsis' testimony.  There is nothing in the

15  record that would allow me to find that, again, that isolated grille belonged to the 1994

16  pickup truck, or that the Hoffsises misrepresented the situation.  I cannot make that

17  finding.

18         Going back to the first bankruptcy case, once the vehicles were both

19  repossessed, Mrs. Hoffsis' testimony is they had no transportation, her husband lost his

20  job, they became in arrears on the plan payments, and the case was dismissed.

21  Unfortunately, not an unusual happenstance in Chapter 13 bankruptcy cases.

22         With respect to the claim of Colonial, I do not know from the record before

23  me how the Debtors could do anything other than treat this as an unsecured claim.  I

24  have nothing in the record to suggest, as I have said, that that shell of the 1994

25  Chevrolet pickup truck has any value whatsoever.  It was repossessed by Colonial prior

1  to the commencement of this bankruptcy case, and I think Colonial has been treated

2  appropriately in the face of any proof to the contrary.  How it can value its secured

3  claim at $6,900.00 in face of the missing parts, I do not know, but I do not find and

4  cannot find that Colonial was entitled to be treated as a secured creditor under

5  Section 1325(a)(5)(B) of the Bankruptcy Code as presently enacted.

6  With respect to the bad faith issues, all debtors are required to file and

7  proceed both in their bankruptcy cases and in the formulation of their plans in good

8  faith.  *See In re Glenn*, 288 B.R. 516, 519-520 (Bankr. E.D. Tenn. 2002).  Plans must be

9  proposed in good faith under Section 1325(a)(3) and the court in making the good faith

10 determination has to consider the totality of the circumstances based upon the Debtors'

11 past and present circumstances by considering:  (1) the motivation for filing for

12 bankruptcy; (2) whether this is the first or subsequent filings; (3) the types of debts and

13 how the debtors have dealt with their creditors; (4) whether the proposed payments are

14 a mockery to other debtors; (5) the burden of administering the plan; and (6) prospects

15 for rehabilitation.  *See Glenn,* 288 B.R. at 520 (citing *Soc'y Nat'l Bank v. Barrett (In re*

16 *Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992)) and *In re Sexton*, 230 B.R. 346, 351 (Bankr.

17 E.D. Tenn. 1999).

18 Colonial brings up the insurance issue.  As far as I can tell, there is no

19 insurance issue at present because the Debtors do not own and are not in possession of

20 any vehicle encumbered with liens in favor of Colonial.  Yes, they are dealing with a

21 vehicle to Conner Motor Company, as I understand it, through the plan.  Conner Motor

22 Company has worked out an arrangement with the trustee regarding insurance and there

23 are certain conditions that are being imposed upon Mr. and Mrs. Hoffsis under the plan

24 with respect to maintaining that insurance.  As I understand it, the insurance is not

25 going to lapse again; if it does, this case is not going to be around very long.

1       These are not sophisticated Debtors. This is their second bankruptcy case. I

2  cannot find from the testimony this afternoon that there is any bad faith. I am

3  concerned because apparently they did convert a $2,600.00 tax refund postpetition from

4  their 2005 taxes to their own use in the face of a plan that required all but $1,000.00 of

5  that refund to be paid to the trustee. Mrs. Hoffsis' testimony, however, is that it was her

6  understanding that Ms. Kerney would be consulted and that her attorney would seek to

7  obtain authorization to use the balance of the tax refund; that when the refund ended up

8  in her account, she assumed that that approval from the trustee had been obtained when,

9  in fact, it had not. She went ahead and used that money for living expenses and she has

10  supplied receipts showing where it went. She has accounted for a substantial portion of

11  it.

12       Both Debtors are now working regularly. Mr. Hoffsis is employed at $10.00

13  an hour. He formerly worked at Middle Creek Garage. It is my recollection he does

14  not work there at present but works at Roger's Transmission or some entity performing

15  his trade as a mechanic. He is working a 40-hour week. Mrs. Hoffsis is employed at

16  $8.00 an hour working a 40-hour week. They have the ability to make this plan work;

17  whether it will work is up to them. Certification language has been added to the plan.

18  As far as I am concerned, this will be their last bankruptcy case. There are concerns

19  that I have. This case was filed in order that these folks might keep their home. I am

20  going to give them an opportunity to do that. I cannot find from a totality of the proof

21  here today that this case was filed in bad faith. There were mistakes made. There were

22  mistakes made by Debtors who are not sophisticated. I do not expect those mistakes to

23  be made again; if they are, these folks will not be in bankruptcy and they will be out. It

24  is my understanding that there is criminal prosecution pending with respect to the

25  missing parts and the 1994 pickup truck. That will have to run its course outside the

1  scope of this bankruptcy case.  These folks are going to be given an opportunity to

2  make this plan work; whether it does is entirely up to them.

3      Colonial's objection will be overruled.  The Debtors have met their burden

4  of proof.  Their plan will be confirmed.

5      This Memorandum constitutes findings of fact and conclusions of law as

6  required by FED. R. CIV. P. 52(a), made applicable to this contested matter by

7  Rule 9014(c) of the Federal Rules of Bankruptcy Procedure.  I will not ask the court

8  reporter to transcribe my opinion.  If it is transcribed, an original only will be prepared

9  and delivered to me for such additions and corrections as I deem appropriate.  An order

10  will be entered within the next day or so overruling the objection and directing

11  confirmation of the plan.  Confirmation will be by a separate order.

12  FILED:  June 21, 2006

13

14          /s/ *RICHARD STAIR, JR.*
        RICHARD STAIR, JR.
15          U.S. BANKRUPTCY JUDGE

16

17

18

19

20

21

22

23

24

25